**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Timothy J. Richissin, *et al.*, | ) | CASE NO. 20 CV 871 |
| | ) | |
| Plaintiffs, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| Rushmore Loan Management | ) | |
| Services, LLC, *et al.*, | ) | Memorandum of Opinion and Order |
| | ) | |
| Defendants. | ) | |

### INTRODUCTION

This matter is before the Court upon Defendants' Motion for Judgment on the Pleadings (Doc. 14).  This is a breach of contract case.  For the reasons that follow, the motion is GRANTED in PART and DENIED in PART.  Defendants' motion is DENIED as to count one and GRANTED as to count two.

### FACTS

For purposes of ruling on the pending motion, the facts set forth in the pleadings are presumed true.

1

Plaintiffs Timothy and Heidi Richissin filed this lawsuit against defendants Rushmore Loan Management Services LLC ("Rushmore") and U.S. Bank Trust, N.A., as Trustee for Loan Acquisition Trust 2017-RPL1 ("U.S. Bank") alleging wrongdoing related to a settlement agreement.

Plaintiffs executed a promissory note and mortgage in connection with the acquisition of real property. Non-defendant Household Realty Corporation ("HRC") initiated foreclosure proceedings against plaintiffs in 2013. As part of a resolution of the foreclosure action, plaintiffs and HRC entered into a settlement agreement. The settlement agreement bound all parties, as well as their successors and assigns. Pursuant to the agreement, HRC agreed to report to the three major credit reporting agencies that the tradeline has been deleted. It appears that HRC fulfilled its obligation. The agreement provides that, prior to instituting litigation related to the credit reporting, plaintiffs would notify each of the three credit reporting agencies through the dispute processes set forth in the Fair Credit Reporting Act.

According to the complaint, on or about February 1, 2017, the loan was sold to defendant U.S. Bank. At some point between the sale of the loan and September 26, 2019, defendant Rushmore improperly reinstated the tradeline. In correspondence dated September 26, 2019 ("September 26 letter"), counsel for plaintiffs informed Rushmore that they believed Rushmore committed an error in the "servicing of the loan" by reinstating the tradeline in contravention of the settlement agreement. Rushmore responded on October 22, 2019, acknowledging that it erroneously reinstated the tradeline. Rushmore indicated that the reporting has been "suppressed' and that it placed a "permanent block" on the account.

Plaintiffs allege that they suffered damage to their credit ratings, which prevented them

2

from obtaining credit.  Thereafter, plaintiffs filed this lawsuit containing two claims for relief.

Count one is a claim for breach of contract and is asserted against both defendants.  Count two is

a claim for violation of the Real Estate Settlement Procedures Act ("RESPA") and is asserted

only against defendant Rushmore.

Defendants move for judgment on the pleadings and plaintiffs oppose the motion.

**STANDARD OF REVIEW**

A "motion for judgment on the pleadings under Rule 12(c) is generally reviewed under

the same standard as a Rule 12(b)(6) motion."*Mellentine v. Ameriquest Mortg. Co.,* 2013 WL

560515 (6th Cir. February 14, 2013) (citing *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 851

(6th Cir.2001)).  "For purposes of a motion for judgment on the pleadings, all well-pleaded

allegations of the pleadings of the opposing party must be taken as true, and the motion may be

granted only if the moving party is nevertheless entitled to judgment." *JPMorgan Chase Bank,*

*N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir.2007).

Thus, "[w]e assume the factual allegations in the complaint are true and construe the

complaint in the light most favorable to the plaintiff."  *Comtide Holdings, LLC v. Booth Creek*

*Management Corp.,* 2009 WL 1884445 (6th Cir. July 2, 2009) (citing *Bassett v. Nat'l Collegiate*

*Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir.2008) ).  In construing the complaint in the light most

favorable to the non-moving party, "the court does not accept the bare assertion of legal

conclusions as enough, nor does it accept as true unwarranted factual inferences." *Gritton v.*

*Disponett,* 2009 WL 1505256 (6th Cir. May 27, 2009) (citing *In re Sofamor Danek Group, Inc.*,

123 F.3d 394, 400 (6th Cir.1997).  As outlined by the Sixth Circuit:

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the

3

claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests."*Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir.2012). Thus, *Twombly* and *Iqbal* require that

the complaint contain sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face based on factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 570;

*Iqbal*, 556 U.S. at 678. The complaint must contain "more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

**ANALYSIS**

1. Breach of contract

According to defendants, the settlement agreement requires that plaintiffs notify the three

major credit reporting agencies before instituting litigation. Plaintiffs, however, fail to allege that

they satisfied this condition precedent before filing this lawsuit. Plaintiffs respond that they have

alleged that they "dutifully performed their obligations pursuant to the Agreement and have

complied with all of its terms and conditions." According to plaintiffs, this is sufficient to allege

that they complied with all conditions precedent.

Upon review, the Court rejects defendants' argument. It is not entirely settled whether a

plaintiff is required to affirmatively plead the performance of a condition precedent when

performance of the condition is not an *element* of the underlying cause of action. *See, e.g.,*

4

*Brown Family Trust, LLC v. Dick's Clothing and Sporting Goods Inc.*, 2014 WL 617668 (S.D. Ohio Feb. 18, 2014).  The Court, however, need not reach this issue.   Federal Rule of Civil Procedure 9(c) provides that "in pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed."  *See, Ginsburg v. Ins. Co. of North America*, 427 F.2d 1318 (6th Cir. 1970)(plaintiff satisfied Rule 9(c) by affirmatively pleading in requests for admission that she performed conditions precedent).  The Court finds that plaintiffs' allegation that they have complied with all conditions to the contract satisfies the pleading requirements set forth in Rule 9(c).  Thus, even assuming plaintiffs are required to plead performance of conditions precedent, they have done so here.

Defendants citations are inapposite.  As an initial matter, defendants cite Ohio cases, which do not address federal pleading rules.  Defendants further cite *Salazar v. Progressive Northern Ins. Co.*, 2014 WL 12596528 (N.D. Ohio Sept. 30, 2104).  *Salazar*, however, is easily distinguishable.  In *Salazar*, the court first noted that Rule 9(c) requires only a general allegation of compliance with conditions precedent.  The court held, however, that dismissal may be proper where the facts pleaded by the plaintiff "contradict her general claim that she satisfied the conditions precedent to filing suit under the insurance policy."  There is no such contradiction in the complaint before this Court.[1]

For these reasons, the Court finds that defendants are not entitled to judgment on the pleadings.

---

[1]     Defendants also rely on *Prince v. NLRB*, 2017 WL 1424983 (S.D. Ohio April 20, 2017).  In *Prince*, however, the *pro se* plaintiff did not dispute that he failed to exhaust his administrative remedies  a condition precedent   prior to filing suit.

5

2. RESPA

Defendant Rushmore argues that judgment on the pleadings is warranted because the September 26 letter does not constitute either a qualified written request ("QWR") or a notice of error ("NOE").  According to defendant, both of these terms require that the correspondence relates to the "servicing" of the loan.  Because the September 26 letter did not identify a problem with the servicing of the loan, and instead related to the reinstatement of the tradeline on plaintiffs' credit report, there can be no RESPA violation.  In response, plaintiffs argue that error resolution and information requests apply regardless of whether the servicer receives a QWR. According to plaintiffs, the phrase "other standard servicer's duties," which is set forth in 12 U.S.C. § 2605(k)(1)(c) imposes broader duties on servicers than "merely responding to QWRs that relate to servicing errors."  According to plaintiffs, issues related to credit reporting fall within this broad definition.  Because the September 26 letter identifies a credit reporting issue, which relates to a servicing error, judgment on the pleadings is not warranted.

Upon review, the Court agrees with defendant that judgment on the pleadings is warranted with respect to plaintiffs' claim asserted under 12 U.S.C. § 2605 because the September 26 letter is not directed at the "servicing of the loan."  12 U.S.C. § 2605(e) sets out various obligations loan servicers have in responding to borrower inquiries.  In order to trigger the servicer's statutory duties, the borrower must send the servicer a "[QWR] for information relating to the servicing of [the] loan."  The QWR must include "a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error."  In response, the servicer is obligated to, among other things, timely respond to the borrower, make any appropriate corrections, and transmit to the borrower a written notification of such correction. 12

6

U.S.C. § 2605(e)(2).

The statute goes on to impose credit reporting protection in favor of the borrower. "During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency."  12 U.S.C. § 2605(e)(3).

The Court finds that the September 26 letter does not relate to the "servicing of the loan" and, as such, defendant cannot be liable under Section 2605(e)(3).  "Servicing" is a statutorily defined term.  "The term 'servicing' means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan...and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. §2605(i)(3).  Not all issues arising between borrowers and servicers are subject to 12 U.S.C. § 2605(e)(3).  *See, e.g., Smallwood v. Bank of America*, 2015 WL 7736876 (S.D. Ohio Dec. 1, 2015)(requests for loan modifications are not QWRs because modifications do not qualify as "servicing" such that obligations are triggered under Section 2605.  The complaint does not allege any error on the part of the defendant in either "receiving scheduled periodic payments" or "making...payments" on behalf of the borrower.  Rather, the September 26 letter identifies "breaching a settlement agreement by failing to suppress credit reporting" as the basis for its request.  (Doc. 1-1).  Plaintiffs do not cite any authority supporting a conclusion that breaching the terms of a separate settlement agreement constitutes a "servicing" error.  This is so even though the underlying issue is the alleged

7

reinstatement of the tradeline. There is no indication that the reinstatement arose as the result of the failure of defendant to properly account for the receipt and distribution of payments made by plaintiffs. Nor is there any allegation that defendant ever improperly reported any credit information to a credit bureau.[2] Rather, the sole basis for the September 26 letter is to alert defendant that it is in breach of a settlement agreement. The Court finds that these actions do not meet the statutory definition of "servicing" and, as such, defendant's obligations under Section 2605(e) are not triggered by the September 26 letter.

Plaintiffs also allege that defendant violated Sections 2605(k)(1)(c), which is directed at NOEs. Section 2605(k)(1)(c) prohibits a servicer from failing to "take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." According to plaintiffs, the phrase "other standard servicer's duties" imposes broader obligations on servicers than merely responding to requests that relate to servicing errors. In support of their position, plaintiffs rely on 12 C.F.R. § 1024.35[3] and the commentary thereto. The provision provides as follows:

> (b) Scope of error resolution. For purposes of this section, the term "error" refers to the following categories of covered errors:

---

[2]     Plaintiffs do not allege that defendant's reinstatement of the tradeline violates any credit reporting obligations that arise pursuant to statute. Nor do plaintiffs contend that the tradeline is inaccurate. Rather, plaintiffs allege solely that defendant's obligations to maintain deletion of the tradeline arise by contract.

[3]     This provision appears in Regulation X, which was promulgated by the Consumer Financial Protection Board. Regulation X expanded servicer's duties to respond to requests made by borrowers.

(1) Failure to accept a payment that conforms to the servicer's written requirements for the borrower to follow in making payments.

(2) Failure to apply an accepted payment to principal, interest, escrow, or other charges under the terms of the mortgage loan and applicable law.

(3) Failure to credit a payment to a borrower's mortgage loan account as of the date of receipt in violation of 12 CFR 1026.36(c)(1).

(4) Failure to pay taxes, insurance premiums, or other charges, including charges that the borrower and servicer have voluntarily agreed that the servicer should collect and pay, in a timely manner as required by § 1024.34(a), or to refund an escrow account balance as required by § 1024.34(b).

(5) Imposition of a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower.

(6) Failure to provide an accurate payoff balance amount upon a borrower's request in violation of section 12 CFR 1026.36(c)(3).

(7) Failure to provide accurate information to a borrower regarding loss mitigation options and foreclosure, as required by § 1024.39.

(8) Failure to transfer accurately and timely information relating to the servicing of a borrower's mortgage loan account to a transferee servicer.

(9) Making the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process in violation of § 1024.41(f) or (j).

(10) Moving for foreclosure judgment or order of sale, or conducting a foreclosure sale in violation of § 1024.41(g) or (j).

(11) Any other error relating to the servicing of a borrower's mortgage loan.

In addition, plaintiffs point out that the commentary indicates that

...[S]tandard servicer duties are not limited to duties that constitute "servicing," as defined in this rule, and include, for example, duties to comply with investor agreements and servicing program guides, to advance payments to investors, to process and pursue mortgage insurance claims, to monitor coverage for insurance (e.g., hazard insurance), to monitor tax delinquencies, to respond to borrowers regarding mortgage loan problems, to report data on loan performance to investors and guarantors, and to work with investors and borrowers on options to mitigate losses for defaulted mortgage loans.

Defendant argues that there is nothing on the face of the statute or Regulation X that would include credit reporting errors as within the scope of an NOE under RESPA.  The Court agrees with defendant.  Plaintiffs do not allege or argue that the alleged breach of the settlement agreement or any failure to properly report credit information falls within the first ten enumerated categories of 12 C.F.R. § 1024.35.  Rather, plaintiffs argue that credit reporting errors constitute "other" errors that relate to the servicing of a mortgage loan under category 11.  But, defendant's obligation to refrain from reporting the tradeline arose as a result of a written settlement agreement, not as a "*standard* servicer duty."  Moreover, even if this alleged error arose outside of the settlement agreement, the Court disagrees with plaintiffs' position that credit reporting falls within the "catchall" phrase of 12 C.F.R. § 1024.35(b)(11).  Congress and the Consumer Financial Protection Board are surely well-aware that credit reporting may occur, yet this activity is not expressly identified anywhere as a "servicing duty" or servicing "error."  This may be because the Fair Credit Reporting Act is a remedial statutory scheme that covers credit reporting errors.

Plaintiffs argue that 12 U.S.C. § 2605(e)(3) ,which imposes an obligation on servicers to suspend credit reporting, demonstrates that Congress understood that servicers undertake credit reporting duties. The Court finds that Section 2605(e)(3) undercuts, rather than advances, plaintiffs' position.  Congress inserted this provision into RESPA, but did not expressly identify "credit reporting" *anywhere* as an enumerated "servicing" activity or "servicing error."  This demonstrates an intent that credit reporting activities would not trigger obligations under Regulation X.  Regardless, plaintiffs cite no law supporting their position that credit reporting

10

constitutes a "servicing" activity under RESPA.[4]

Nor does the commentary save plaintiffs' claim.  Plaintiffs argue that the commentary identifies additional types of activities, including working with "borrowers on options to mitigate loss for defaulted mortgages," that may trigger the servicer's duty to respond to an NOE.   But there are no allegations in the complaint that the September 26 letter is directed at "options to mitigate loss for a mortgage in default."  Accordingly, the commentary does not assist plaintiffs.

The Court also rejects plaintiffs' argument that they have stated a claim for violation of Section 2605(k)(1)(E).  That provision prohibits a servicer from failing to "comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."  Plaintiffs do not identify any such "other obligation."

Because plaintiffs fail to point to any provision of RESPA that is triggered by the September 26 letter, which notified defendant that it breached the parties' settlement agreement, defendant is entitled to judgment on the pleadings with respect to count two.

---

[4]    Plaintiffs argue that "several courts have *allude*d to the fact that questions related to credit reporting raised in either QWRs or NOEs may constitute viable claims under 12 C.F.R. § 1024.35(b)(11)."  (Doc. 18 at PageID 153)(emphasis added).  But a cursory review of these cases demonstrates that they do not support plaintiffs' position because they do not discuss whether credit reporting issues trigger obligations under RESPA.  *See, Fowler v. Bank of America, Corporation*, 747 Fed. Appx. 666, 670 (10th Cir. 2018)(rejecting plaintiffs' claim that any actual damages suffered for improper credit reporting were tied in any way to plaintiff's RESPA claims); *Ponder v. Ocwen Loan Servicing*, 2020 U.S. Dist. LEXIS 145132 (N.D. Ga. April 22, 2020)(summary judgment not proper where defendant generically argued that plaintiff's letters do not constitute QWRs because they were "tantamount to a continuous wild goose chase").

**CONCLUSION**

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings  is

GRANTED in PART and DENIED in PART.  Defendant's motion is DENIED as to count one

and GRANTED as to count two.

IT IS SO ORDERED.


  /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge
Chief Judge

Dated:  11/30/20

12